MARY LIPARI AND JOSEPH LIPARI, PLAINTIFFS-RE-SPONDENTS, v. NATIONAL GROCERY COMPANY, DEFENDANT-APPELLANT.

ANTHONY LIPARI AND JOSEPH LIPARI, JR., INFANTS BY THEIR NEXT FRIENDS, MARY AND JOSEPH LIPARI AND MARY AND JOSEPH LIPARI, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. NATIONAL GROCERY COMPANY, DEFENDANT-APPELLANT.

SARA LIPARI, INFANT BY HER NEXT FRIENDS, MARY AND JOSEPH LIPARI, AND MARY AND JOSEPH LIPARI, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. NATIONAL GROCERY COMPANY, DEFENDANT-APPELLANT.

Submitted October 5, 1937—Decided April 9, 1938.

Before Justices CASE and DONGES.

For the plaintiffs-respondents, *Chazin & Chazin* (*Theodore S. Chazin*).

For the defendant-appellant, *Edwards, Smith & Dawson* (*Forrest S. Smith*).

The opinion of the court was delivered by

CASE, J.   The appeals are from judgments in three suits tried together in the District Court of the Second Judicial District of the county of Hudson.   Mary Lipari and Joseph Lipari are the parents of the minors, Anthony, Joseph, Jr., and Sara.   The suits arise out of damages alleged to have ensued from the eating of tuna fish purchased in a sealed can from one of the defendant's stores.   The complaint in the first suit contains two counts, one by Mary, the mother, for her personal injuries, and the other by Joseph for incidental damages as the husband of Mary.   The complaint in the second suit contains four counts, the first on behalf of the infant, Anthony, the third on behalf of the infant, Joseph, Jr., and the second and fourth by the parents for incidental damages arising out of the children's claims.   The complaint in the third suit has three counts, the first on behalf of the infant, Sara, the second count incidental thereto by Joseph and Mary as her parents, and the third by the father, Joseph, in his own right.

Mary Lipari purchased, by her son Anthony as agent, from the defendant, a retail grocer, a tin of tuna fish canned by the West Coast Packing Corporation and bearing the printed label "Far Famed Brand, fancy light meat tuna fish, weight 13 ounces net, canned in cotton seed oil, packed by the West Coast Packing Corporation, division of Italian Food Products Company, Inc., Long Beach, California, U. S. A."   The canner, West Coast Packing Corporation, had an excellent reputation in the trade.   The product was bought by the defendant through a New York broker.   The goods were received in quantity, by steamer delivery, in New York City.

On delivery the goods were subjected to the defendant's usual practice which was to select, at random, a number of individual cans, test the contents for quality, and accept the shipment if the sampled goods be found up to specification, otherwise reject. No further tests were made. Defendant had other brands of canned tuna fish on its shelves for sale at the time of the sale in the instant case. Anthony Lipari, in purchasing the can in question, bought it knowing that it was the same kind that his mother always bought, that that was what he wanted and what his mother told him to get. He told the salesman that he wanted the same kind his people always got. He would have accepted no other. Mrs. Lipari opened the can, and although she found the contents dry and brittle, used the same along with other foods for the evening meal. All who ate of the fish later suffered from food poisoning. We consider that the proofs were sufficient, under *Griffin* v. *James Butler Grocery Co.*, 108 *N. J. L.* 92, to raise a jury question as to whether the sickness of the several plaintiffs was caused by the fish.

The verdict was "$150 for Mary and Joseph Lipari, $100 for the children Anthony and Joseph, and $50 for Sarah Lipari." Appellant contends that the trial court erred in three general respects; in refusing to nonsuit and to direct a verdict; in charging as the court did and in refusing to charge as requested; and in entering judgment upon a fatally defective verdict.

Except as to the award of $50 to the infant Sara, the verdict was clearly defective in that there was no basis upon which the sum assessed could be appropriated to one or another of the claimants. The judgment was erroneously entered thereon. *Spencer* v. *Haines*, 73 *N. J. L.* 325; *O'Carroll* v. *Stark*, 85 *Id.* 438; *Warner* v. *Public Service Coordinated Transport*, 9 *N. J. Mis. R.* 328. Respondents concede that this is so but ask that the reversal be as to amount of damages only. We do not accede to that request. Retention by an appellate court of so much of the judgment as finds liability and reversal as to the amount of damage only is a discretionary power that should be used cautiously.

*Padayao* v. *Severance,* 116 *N. J. L.* 385; *Juliano* v. *Abeles,* 114 *Id.* 510. On this branch of the appeal we reach a reversal of all judgments except that of Sara.

We find no error in the charge or in the refusal to charge. However, the request to direct a verdict in favor of defendant as against all plaintiffs should, in our opinion, have been granted.

The case was not brought, and is not rested, upon the theory of warranty, either express or implied. It grounds in the alleged tortious negligence of the defendant. The negligence is pleaded in this language:

"The defendant, its agent and servant, was careless, reckless and negligent, in the manner of preparing and keeping for sale said tuna fish, in that it caused and allowed foreign and deleterious substances to go into the canning and packing of said tuna fish, and in that it kept for sale and sold a can of tuna fish which was unfit for human consumption, and in that it kept for sale and sold a can of tuna fish which was deleterious and unwholesome; all of which the defendant knew, or could have by reasonable inspection ascertained."

The defendant had nothing to do with the preparing or the canning of the fish, and it did not put out the product under its own name or label. It is not a manufacturer within the purview of *Cassini* v. *Curtis Candy Co.,* 113 *N. J. L.* 91. In the very recent opinion by Mr. Justice Donges in *Cornelius* v. *B. Filippone & Co., Inc.,* 119 *Id.* 540, it was held that a wholesale grocer who buys canned goods from a packer and resells it in the same condition in which he buys it to a retail dealer cannot be held for the negligence of the packer of the product. The food came to the defendant in the same sealed package and with the same marking as it did to the plaintiffs. This, on a charge of negligence, narrows the liability of the defendant dealer. The respondents contend that "the defendant, a vendor of food, owed a duty to the plaintiffs to use reasonable care to inspect the food which it kept for sale and sold for such defects as would be disclosed by such inspection." Accepting that as the measure of the defendant's duty, it seems not to have been possible for the

defendant to inspect the contents of the package without ripping open the tin container and thereby making the contents, whether good or bad, unsalable. To require that procedure would, we think, be unreasonable and therefore the doing of it was not within the defendant's duty. It is suggested by the respondents that there might have been an opening or a defect in the can; but there was no proof of that. It is also intimated that possibly the can was held in stock for too long a time; but, again, there is no proof as to how long the can was kept on the shelves or what, if any, limitation there is to the time for which food so packed may safely be kept. The burden of proof was upon the plaintiffs. We can find no evidence of negligence and no proofs from which negligence may be inferred or presumed unless it be that the doctrine of *res ipsa loquitur* applies. Does a presumption of negligence arise against the defendant out of the fact that plaintiffs were made ill by food purchased from the defendant under the circumstances above named, in a sealed container in the preparing and packing of which food defendant had no part? Our view is that it clearly does not. An inherent factor in the *res ipsa loquitur* doctrine is that the misadventure would not have happened in the ordinary course of things if the person charged had used proper care. *Smith* v. *Kirby,* 115 *Id.* 225. As the defendant did not prepare the food and did not fill or seal the can and had no means, except by destroying the package, of ascertaining whether the contents of the can had spoiled, we think that the result is not to be read as proof against it. See *Kusick* v. *Thorndike & Hix, Inc.* (*Mass.*), 112 *N. E. Rep.* 1025. If it be said that when individually packaged goods contained within sealed cans are found, upon opening, to be spoiled, it is in the ordinary course of things that the retailer who buys and sells the unopened package has committed an actionable fault, we are obliged to observe that such an assertion is not within our knowledge and that there is no evidence in this case to sustain it.

We conclude that there were no proofs upon which a finding of negligence could be based and that therefore the motions under review should have been granted.

It appears, on the face of the proofs, that the choice of the brand was determined by the buyer. The legal effect of such a situation was a question reserved in *Griffin* v. *James Butler Grocery Co., supra,* and there is no occasion for the question, or for the pertinency of the question to a charge of negligence, to be decided now.

The judgment is reversed.