25 N.J. Super. 335 (1953)
96 A.2d 534
RICHARD O'DONNELL, PLAINTIFF-APPELLANT,
v.
ASPLUNDH TREE EXPERT CO., A/K/A THE ASPLUNDH CO., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1953.
Decided March 27, 1953.
*336 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Sidney M. Schreiber argued the cause for appellant (Messrs. McKeown, Schreiber, Lancaster & Demos, attorneys; Mr. Roger F. Lancaster, on the brief).
Mr. James B. Emory argued the cause for respondent (Messrs. Emory, Langan & Lamb, attorneys; Mr. James J. Langan, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
The mishap which has occasioned the present litigation occurred at Chelsea Place in East Orange on March 30, 1950. The plaintiff was engaged in the pursuit of his employment by the East Orange Shade Tree Commission and had ascended a swamp oak tree to perform some pruning of its limbs and branches. He was wearing a safety saddle and belt, to which was attached a clip, hook, or snap through the collar of which passed a manila rope half inch in diameter and about 120 feet in length. The rope was crotched in the tree at a point about 20 feet above him. He endeavored in accordance with the practice of such an occupation to swing to another part of the tree and while in suspension *337 the clip, sometimes called the snap or hook, suddenly fractured and he dropped to the ground.
He sought the recovery of compensatory damages for the injurious consequences of the mishap from Meeker Foundry Company which made the castings, the Covert Manufacturing Company which provided the requisite rivet and attached the clip and spring, and the Asplundh Tree Expert Company which supplied the clip to the Shade Tree Commission.
At the conclusion of the introduction by the plaintiff of the evidence relating to the issue of liability, judgments of involuntary dismissal were granted in favor of all of the defendants. Only the judgment of dismissal in favor of the Asplundh Company is the subject of the present appeal. Hereinafter the Asplundh Company will be designated as the defendant.
We necessarily approach the consideration of the propriety of the judgment under review with the consciousness that the court must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all inferences which may logically and legitimately be drawn therefrom in his favor. Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951).
In this case there was a prima facie background of certain basically essential facts. The defendant had previously sold to the East Orange Shade Tree Commission, among others, the clip which failed. It could have been logically and legitimately inferred that the defendant had reason to contemplate that the clip would be attached to some safety appliance which the Commission would supply for the use of its tree trimmers. The part of the clip that broke was a malleable iron casting which fractured at a brittle location where "the malleable-izing treatment had not been carried out perfectly and with complete success and that constituted a latent defect in the material of which the hook (clip) was made." The weakness would not be discernible "without breaking down and microscopic examination" or by subjecting the part to a "hardness test." Moreover "a malleable casting *338 is not the best material for this type of use * * * the forging would be much more effective."
The plaintiff's amended complaint is examined definitely to ascertain the character of his alleged cause of action against this defendant. It is therein alleged that "the aforesaid safety clip or snap broke causing plaintiff to fall to the ground, as a result of the negligence of the defendant Asplundh Tree Expert Co. in negligently assembling, testing and inspecting the aforesaid safety clip or snap and further negligently represented that this safety hook or snap was adequate to be used as a safety hook or snap for use by tree trimmers." The pretrial order states: "This suit is as pleadings indicate predicated solely on negl and no question of warranty, express or implied. Issues negl, contr. negl and assumption of risk. The above statement is not supposed to supplant the issues in the pleadings."
There is no evidence discoverable in the transcript warranting a reasonable inference that the component parts of the clip were in fact carelessly assembled, much less that this defendant was in any wise implicated in that function.
We then examine the transcript in search of the presence of some evidence that this defendant was negligent in "testing and inspecting" the clip, from which dereliction the mishap proximately resulted.
Initially we must realize that this defendant was not the manufacturer of the clip, nor is it evident that the defendant introduced it to the market as its own product under its own name or label. Cf. Heckel v. Ford Motor Co., 101 N.J.L. 385 (E. & A. 1925), with Martin v. Studebaker Corp., 102 N.J.L. 612 (E. & A. 1926), and Slavin v. Francis H. Leggett & Co., 114 N.J.L. 421 (Sup. Ct. 1935), affirmed 117 N.J.L. 101 (E. & A. 1936).
We shall nevertheless assume that the defendant as a vendor of the clips was under the duty to exercise reasonable care in the examination and inspection of them before sale, but certainly the law does not exact of a vendor the performance of impracticable tests and inspections or those unachievable without destroying the article and its market-ability. *339 Vide, Lipari v. National Grocery Co., 120 N.J.L. 97 (Sup. Ct. 1938); Roberts v. Geo. M. Brewster & Son, Inc., 13 N.J. Super. 462 (App. Div. 1951), certif. denied 7 N.J. 582 (1951); Nelson v. Fruehauf Trailer Co., 11 N.J. 413, decided February 9, 1953.
The testimony at the trial of the present action coming from the plaintiff's expert witness disclosed that the defect that caused the clip to fail was concealed in the interior of the casting and that it would be discoverable by an expert only by a disintegration of the casting followed by the use of a microscope.
Assuredly the duty to make such an inordinate test did not legally devolve upon the defendant as a vendor, and its failure to perform such a test did not constitute in the legal conception of reasonable care proof of a culpable omission of a legal duty.
Yes, additionally, the plaintiff alleged that the defendant "negligently represented that this safety hook or snap was adequate to be used as a safety hook or snap for use by tree climbers." There is no proof that any such representation was expressly or impliedly made by the defendant to the plaintiff. There is no proof of any contractual relationship between the defendant and the plaintiff. There is no allegation or proof that at the time of the sale of the clip to the plaintiff's employer the defendant knew such a representation to be false.
We observe in the record evidence indicating that subsequent to the sale of the clips to the Shade Commission the defendant was informed by the Covert Manufacturing Company that:
"None of our snaps are drop forged or suitable for safety equipment but many of them are used for hanging accessories on linemen's belts and for ropes and other types of equipment not requiring critical loads."
Suffice to state that if upon the receipt of that information there was a duty on the part of the defendant to communicate that subsequently acquired cognizance to its previous vendees *340 (a subject concerning which we express no opinion), it is obvious that the plaintiff alleged no cause of action arising out of any such omission of duty by the defendant.
The judgment under review is affirmed.
BIGELOW, J.A.D. (dissenting).
The defendant Asplundh Tree Expert Co. sold to the East Orange Shade Tree Commission a metal clip or fastener for use as part of the equipment of the Commission's employees when trimming trees. The Asplundh Co. knew that if the clip should break while in use, the unfortunate person who was relying on it would probably be killed or at least seriously injured. The clip did break and plaintiff was grievously hurt.
The break in the clip was the result of a flaw in the metal that could not be detected by any practical inspection; to all appearance, the clip was sound and safe. Any failure of plaintiff or of defendant to inspect, did not constitute negligence. But the clip was made of malleable iron  another fact that could not readily be determined by inspection  a metal which is not suitable for the use for which Asplundh sold this clip. Drop forged steel is the accepted material for such purposes. Malleable iron is not advisable because it is too apt to contain flaws that are hidden from the eye and that may lead to disaster. The maker of these clips was The Covert Manufacturing Company, an old established firm, manufacturing hardware for harness and saddlery. If defendant had inquired of the manufacturer, it would have been told that the clips were not suitable for safety equipment because they were not drop forged, although they were excellent for use around the stable.
The defendant owed to whoever might use the clip a duty to exercise such care as was commensurate with the hazard, to the end that the clip would be of such quality that it could safely be used. Roberts v. Geo. M. Brewster & Son, Inc., 13 N.J. Super. 462 (App. Div. 1951); Restatement, Torts, § 401. And see Shearman & Redfield on Negligence (1941 ed.), §§ 653 and 655; Cunningham v. C.R. Pease, etc., Co., 74 N.H. 435, 69 A. 120; 20 L.R.A.N.S. 236 *341 (N.H. Sup. Ct. 1908). What is reasonable care varies with the circumstances. Had defendant been the manufacturer of the clips, it would have been required to exercise reasonable care to select a kind of metal for making the clips, that would secure a safe, finished product. Restatement, Torts, § 395, Comment on p. 1076. But the defendant was not the manufacturer; it was a middleman, a supplier. A supplier who sells goods made by another, in the original package and bearing the label of the manufacturer, is not liable for hidden defects. Cornelius v. B. Filippone & Co., 119 N.J.L. 540 (Sup. Ct. 1938); Lipari v. National Grocery Co., 120 N.J.L. 97 (Sup. Ct. 1938). Cf. Duncan v. Juman, 25 N.J. Super. 330 (App. Div. 1953). But in all the cases with which I am familiar, in which a retailer has been held not liable, he has pursued the ordinary, normal procedure in obtaining goods for resale; that is, he has bought, through appropriate trade channels, goods made for the express purpose for which he resold them. If, however, the grocer should sell for human consumption poisonous food, unlabelled, made by even the most reputable manufacturer of rat poison, I believe that he would have the burden of explaining how it happened. And likewise with the defendant Asplundh. Its motion for judgment at the close of plaintiff's case should have been denied, and Asplundh should have been required to disclose how it came to pass that it sold a harness clip for use in tree trimming and so set the trap for plaintiff.