257 N.J. Super. 339 (1991)
608 A.2d 447
JOHN MCGUINNESS, LINDA MCGUINNESS, DARRIN GOTTKO AND BRIDGET MCGUINNESS, AND INFANT, BY HER, G/A/L LINDA MCGUINNESS, INDIVIDUALLY, PLAINTIFFS,
v.
WAKEFERN CORPORATION D/B/A SHOP-RITE SUPERMARKETS, COLONIAL FOODS, INC., CAMPBELL SOUP COMPANY, ABC CORPORATION (A FICTITIOUS NAME), DEF CORPORATION (A FICTITIOUS NAME), JKL CORPORATION (A FICTITIOUS NAME), DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided November 15, 1991.
*340 Karen Lee, Javerbaum, Wurgaft & Hicks, Springfield, for plaintiffs John McGuinness, Bridget McGuinness and Darren Gottko.
*341 Wendy S. Bornstein, Sommerville, for plaintiff Linda McGuinness.
Joseph Buttafuoco, Buttafuoco, Karpf & Arce, Kearny, for defendant Wakefern Corp.
Dominick Ciallella, Law Offices of Arthur Z. Charsinsky, Florham Park, for defendant Colonial Foods.
Michael R. McDonald, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, for defendant Campbell Soup Co.
Richard M. Chisholm, Sellar, Richardson, Stuart & Chisholm, P.C., Roseland, for defendant Sorrento Cheese Co., Inc.
MARGULIES, J.S.C.
The facts in this action apparently present a case of first impression in the state of New Jersey. On February 5, 1990, John McGuinness, Linda McGuinness, Darrin Gottko and Bridget McGuinness, members of the McGuinness Family, all ate a lasagna dish prepared by Linda McGuinness. On February 6, 1990, each member of the family began experiencing symptoms of severe nausea, vomiting, fever, diarrhea and general malaise. Thereafter, the family was treated for salmonella type "D" food poisoning with John McGuinness and Bridget McGuinness requiring hospitalization. The plaintiff family alleges the lasagna was the cause of the poisoning. This was supported by the treating physician in his affidavit.
The ingredients used in the preparation of the lasagna, all purchased from the Wakefern Corp., d/b/a, Shoprite Supermarkets (herein "Shoprite") were as follows: skim ricotta cheese and lasagna noodles supplied by Shoprite, eggs supplied by Colonial Foods (herein "Colonial"), mozzarella cheese supplied by Sorrento Cheese Co. (herein "Sorrento") and Prego Sauce supplied by Campbell Soup Co. (herein "Campbell").
The plaintiffs have brought this action in products liability and negligence against the suppliers of the ingredients and the supermarket where they were purchased.
*342 This action comes before the court on a motion for summary judgment brought by defendants Campbell and Sorrento with the defendant Colonial joining in the motion. Defendant Shoprite opposes the motion of the co-defendants. The defendants contend that the plaintiffs have failed to present a prima facie case and that the plaintiffs' claim is not sustainable under any available theory of tort liability. In Griffin v. James Butler Grocery Co., 108 N.J.L. 92, 156 A. 636 (1931), plaintiff purchased canned peaches at a grocery store which were eaten by her and all of the members of her family except her son. All the persons who had eaten the peaches got violently ill. The son who did not eat them did not become ill. The Court in its holding stated:
"The inferences ... that the party were poisoned by bad food, and that such bad food could have been none other than the peaches, were legitimate if not indeed necessary; and hence, there was a clear case for the jury on the facts." Griffin, supra at 94, 156 A. 636.
In Lipari v. National Grocery Co., 120 N.J.L. 97, 198 A. 393 (1938), the court relied on the holding in Griffin. The plaintiff bought a can of tuna fish from the defendant grocery store. The tuna fish was used along with other foods for the evening meal. All who ate the fish later suffered from food poisoning. The court following Griffin considered the proofs sufficient to raise a jury question as to whether the sickness of the several plaintiffs was caused by the fish. That the lasagna caused the sickness in the case at bar is a permissible inference in light of the holdings in Griffin and Lipari. That the sickness was caused by one of the ingredients in the lasagna would logically also be a permissible inference sufficient to raise a jury question making the plaintiffs' prima facie case.
The defendants' second contention is that no applicable theory of tort liability supports the plaintiffs' position.
Under a concert of action theory, the defendants must intentionally unite in the wrongful act, be present and assist or participate therein actively and with common interest so that the injury results from the joint wrongful act of the wrong-doers. *343 American Law of Torts, § 3:2 at 377. The plaintiffs do not allege that the defendants united or acted with a common intent to supply deleterious foodstuffs nor would the facts in the record support such a contention.
The plaintiffs' claim does not conform to a market share liability theory as annunciated in Abbott Laboratories v. Sindell, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980). All defendants must produce the type of product that caused plaintiffs' injuries and plaintiffs, through no fault of their own, must be unable to identify the specific defendant at fault. The burden is shifted to the defendants to prove exculpation with the likelihood that any of the defendants is at fault measured by the percentage which the product sold by each of them bore to the entire production of the product sold by all manufacturers for that purpose provided plaintiffs would ultimately be able to join the manufacturers of a substantial market share of the product. Though the non-identification of the defendant at fault is an issue at bar, the defendants at bar produced dissimilar products.
For the doctrine of res ipsa loquitur to be applicable, the plaintiffs must prove that (1) the occurrence itself ordinarily bespeaks negligence; (2) the instrumentality was in the defendants' exclusive control; and, (except as may be modified by the comparative fault rule), (3) there is no indication in the circumstances that the injury was the result of plaintiffs' own voluntary act or neglect. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958). This action does not fall within res ipsa loquitur in that the spoiling of goods can be attributable to many things outside of negligence. The specific instrumentality is not identified, but is, rather, among a possible group, and whether the injury was the result of the plaintiffs' own acts is possibly yet to be presented by one of the defendants.
The traditional theory of alternative liability was annunciated in the landmark case of Summers v. Tice, 33 Cal.2d 80, 199 *344 P.2d 1 (1948). Summers involved two defendants that committed wrongful acts with one of them responsible for the plaintiff's injuries. The burden of proof shifted to the defendants to absolve themselves of liability with both potentially being jointly and severally liable. At bar, the plaintiffs do not contend that all of the defendants are guilty of wrongdoing nor are the facts sufficient to support such an allegation. This case involves an injury resulting from a single act of negligence committed by one of the defendants with the proof not clear as to which defendant, if any, is guilty of the single act.
Though the traditional theories of liability are inapplicable to this multi-defendant, single wrongful act case, there is New Jersey case law to support it.
The case of Jackson v. Magnavox Corp., 116 N.J. Super. 1, 280 A.2d 692 involved an action for deaths of and injuries to passengers in a car driven by a defendant which collided at night with an unlighted parked trailer leased to the co-defendants. The defendants to whom the trailer was leased argued neither of them could have been the responsible party unless plaintiffs met their burden of showing by a preponderance of the probabilities that a particular one of them was responsible. The court responded:
Rigid procedural principles must bow to common sense and the interests of justice. Where it is virtually certain that one of two defendants is responsible for plaintiff's injuries, the evidential key as to which it is, is peculiarly within the knowledge of the defendants, it is fair that the defendants be called upon to furnish information upon the basis of which the jury can determine the responsible party. Jackson, supra at p. 7, 280 A.2d 692 (emphasis added).
In its instructions, the court instructed the jury to determine which of the co-defendants caused the trailer to be put upon the street and whether that co-defendant was negligent in doing so. The evidence could only support a verdict against one of them. Jackson is similar to the case at bar in that there are multiple defendants at least one of which is subject to liability resulting in plaintiffs' injuries with the plaintiff unaware of the identity of that particular defendant.
*345 The case of Ferrigno v. Eli Lilly & Co., 175 N.J. Super. 551, 567, 420 A.2d 1305 (Law Div. 1980) and Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1 (1975) both involved the issue of whether a cause of action of a plaintiff who cannot identify the negligent defendant will withstand a motion for summary judgment. In both cases, the issue involved two things: (1) the inability to identify the "precise causative agent"; and, (2) the possibility that the unidentified causative agent is not one of the defendants before the court.
In Anderson, plaintiff was injured when a surgical instrument broke off in his spinal canal during an operation for removal of a disc. Plaintiff sued the doctor, the hospital and the distributor of the instruments used in the operation. Except as to say the culpable party was one who was in some way connected with the instrument, plaintiff could not conclusively identify him. There was testimony that the instrument was handled by many other persons prior to the operation.
The Court concluded that where the defendants have engaged in conduct which gives rise to legal obligations by each of them to the plaintiff and alternative theories of liability account for only possible causes of injury, and negligence, strict liability and breach of warranty are all advanced as possible theories of liability, the defendants are required to come forward and give their evidence of non-liability.
In Ferrigno, female offspring brought suit for personal injuries they allegedly sustained because of the drug DES each of their mothers took to prevent miscarriages. The plaintiffs were unable to identify which defendant supplied the DES that caused their particular injuries and it was not certain that the guilty defendant(s) were before the court. The court extended the principle of Anderson to the DES plaintiffs.
It was decided that when plaintiffs, through no fault of their own, were not able to identify precisely who harmed them, *346 although they could say it was one member of a group, it was appropriate to shift the burden of proof to the defendants.
The court in Anderson, 67 N.J. at 303, 338 A.2d 1 added:
In this type of case, no defendant will be entitled to prevail on a motion for judgment until all of the proofs have been presented to the court and jury .. . Inferences and doubts at this stage are resolved in favor of the plaintiff. New Jersey has a strong policy which favors recovery by innocently injured plaintiffs who cannot otherwise recover because they cannot identify the source of their injuries. Lyons v. Premo Pharmaceutical Labs, Inc., 170 N.J. Super. 183 [406 A.2d 185] (App.Div. 1979) at 192-193 [406 A.2d 185]; Ferrigno, supra, [175 N.J. Super.] at 569 [420 A.2d 1305].
On the issue of non-identification of the guilty defendant and the possibility that the precise causative agent of the plaintiffs' injuries is not before the court, as the defendants have contended, the court in Anderson, 67 N.J. at 305, 338 A.2d 1 stated:
"... (t)he fact remains that involvement by any person other than the defendants actually before the court ... has never been asserted as anything other than pure and undisguised speculation ... It would be exceedingly unjust to deny the plaintiff compensation simply because an imaginative defendant can conceive of other possible parties."
In light of the rationale in Anderson, the policy considerations, common sense and the interest of justice all clearly annunciated in New Jersey law, the defendants motion for summary judgment must be denied. Where, as here, there is involved an injury resulting from a single act of wrongdoing (product liability) committed by one of the defendants with the proof not clear as to which defendant, if any, is guilty of the single act and the inference can be drawn that one of the defendants is responsible, the defendants will be required to present evidence of their non-liability.
Plaintiffs' attorneys to submit order in accordance with the foregoing.