**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3071-17T2

STEVEN P. PICCIANO,

    Plaintiff-Appellant,

v.

COSTCO WHOLESALE
CORPORATION, COSTCO
WHOLESALE CORPORATION
OF CLIFTON, NEW JERSEY, and
WAWONA PACKING COMPANY,

    Defendants-Respondents.

_____

Submitted January 24, 2019 – Decided  February 25, 2019

Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4430-16.

Piro, Zinna, Cifelli, Paris & Genitempo, LLC, attorneys for appellant (Daniel R. Bevere, on the briefs).

Fishman McIntyre Berkeley Levine Samansky, PC, attorneys for respondent Costco Wholesale Corporation and Costco Wholesale Corporation of Clifton, New

Jersey (Lawrence M. Berkeley, of counsel and on the brief; David L. Kowzun, on the brief).

Hawkins Parnell Thackston & Young LLP, attorneys for respondent Wawona Packaging Company (Roy F. Viola, Jr. and Manuel A. Guevara, on the brief).

PER CURIAM

Plaintiff Steven P. Picciano appeals from two February 2, 2018 orders granting defendants' Costco Wholesale Corporation (Costco), Costco Wholesale Corporation of Clifton (Costco Clifton), and Wawona Packaging Company (Wawona) summary judgment. We affirm.

The following facts are taken from the motion record. At the time of the underlying incident in this case, Wawona contracted with Costco to supply peaches at its stores. However, Wawona was not Costco's sole supplier of peaches.

Picciano was a Costco member. On July 8, 2014, he shopped at Costco Clifton and purchased a box of peaches. He consumed the peaches over the next week and began experiencing diarrhea, headaches, constant cramping, muscle pains, dehydration, and light-headedness. Picciano was treated by his gastroenterologist for his symptoms.

On July 14, 2014, after Picciano had consumed the peaches, he received a call from Costco advising him of a nationwide recall on peaches distributed by

2

Wawona between June 1, 2014 and July 12, 2014, because of a potential Listeria contamination. The notice provided the lot and block identification numbers subject to the recall. However, Picciano had discarded the packaging before he was made aware of the recall.

Picciano sought medical treatment from Dr. Nader Moaven. Two stool cultures taken a week apart in July and August 2014, tested negative for Listeriosis. Dr. Moaven listed Listeriosis as one of the three potential diagnoses for Picciano's condition.

Dr. Ethan Spira also treated Picciano. His July 30, 2014 report stated Picciano was treated at the hospital "[three] weeks after eating peaches" and his stool was "[n]egative . . . for Listeria." Dr. Spira concluded Picciano was suffering from Irritable Bowel Syndrome (IBS) with "likely slight worsening of symptoms after acute gastroenteritis." Dr. Spira's report also stated:

> Febrile gastroenteritis secondary to listeria infection typically occurs after ingestion of a large inoculum of bacteria contaminated food. The attack rate varies from [fifty to one-hundred percent]. The symptoms included fever, watery diarrhea, nausea, vomiting, headache and pains in muscle and joints. This typical duration of symptoms is two days or less and recovery is generally complete.
>
> . . . .

. . . Picciano carried a diagnosis of IBS-constipation predominant prior to his exposure to Listeria. He clearly had symptoms – fever, diarrhea, abdominal pain, malaise and dizziness compatible with an attack of febrile gastroenteritis secondary to Listeria. His IBS symptoms now include bloating and a mixed IBS syndrome with alternating constipation and diarrhea. He had also developed left sided abdominal pain. These symptoms can persist for years post infectious gastroenteritis.

Dr. Alexis Te treated Picciano in September 2014. Dr. Te noted Picciano's previous Listeria diagnosis, but stated it was a "presumed infection, not documented." Dr. Te's diagnoses did not include Listeriosis. Picciano also received treatment from Dr. Angelo Calabrese, who noted Picciano was "hospitalized . . . for presumed Listeria, not documented." Dr. Calabrese did not diagnose Picciano with Listeriosis.

Picciano filed a complaint against defendants alleging causes of action for strict liability, negligence, breach of warranty, and breach of N.J.S.A. 24:5-1 to -22 prohibiting the sale, distribution, or manufacture of adulterated products. The complaint alleged Picciano's "treating physicians have causally related [his] gastro-enteric illness and symptoms to the Listeria contamination from the peaches he consumed."

Following discovery, which included Picciano's deposition, defendants filed separate motions for summary judgment. Wawona argued there was no

evidence Picciano had consumed Wawona peaches, or that the peaches in question were actually contaminated with Listeria. It argued the medical records did not prove Picciano was actually exposed to Listeria. Wawona also argued Picciano failed to establish he purchased peaches it packaged, because the item number shown on the Costco receipt was "associated with approximately seven different manufacturers."

The Costco defendants argued there was no evidence they had altered the peaches in any way. Picciano conceded this point, because he argued the contamination occurred while the peaches were in the manufacturer's possession.

The motion judge noted:

> [Picciano's expert report] says . . . the symptoms are compatible with listeria poisoning, but that's not the same thing as what [Picciano is] arguing, which is that [Picciano] has listeria and it was caused by the peaches. I don't see any medical evidence, at all, in the record that supports [Picciano]'s case that he was suffering from listeria. That the listeria was caused by exposure to the contaminated peaches. And that [Picciano's] expert actually says that he had listeria, as [Picciano] point[s] out in [his] argument. I'm having problems with that. I don't see any evidence in the record to support any of that.
>
> . . . .

The only time [the expert] mentions exposure to . . . listeria is based upon what [Picciano] is telling him. . . .

Secondly. . . . [T]he final paragraph . . . lists out the symptoms that [Picciano] was suffering from, but basically . . . only goes as far as saying that those symptoms are compatible with an attack of febrile gastroenteritis secondary to listeria. I don't see where he actually says that [Picciano] is suffering from listeria, and that . . . listeria caused the symptoms that he was suffering from.

The judge found Wawona had distributed contaminated peaches, but concluded the potential for receiving contaminated produce was not the same as proving the peaches Picciano purchased were actually contaminated. The judge noted the peaches were never tested to determine whether they were, in fact, contaminated. He stated:

[O]bviously, in your lawsuits you have to establish that the peaches were contaminated and . . . I'm gathering from what was submitted to the [c]ourt that the only evidence [Picciano] [has] is . . . a phone call from Costco or this recall notice. And if I look at the recall notice from the source of the peaches they're not even saying they're certain. It's just a potential for [contamination] — which isn't . . . enough to get past summary judgment.

The motion judge concluded:

I just don't see the evidence that I think is necessary for [Picciano] to pursue the claim in court. It's unfortunate that the peaches are gone, but there's no law or case

6

cited that allows that fact to excuse or lessen his burden under the circumstances.

In . . . [the] opposition [Picciano is] indicating that Dr. Spira is opining that within a reasonable degree of medical certainty [Picciano] suffered listeria poisoning, and that the cause of the poisoning was the contaminated peaches. That's what [Picciano] [has] to prove here. You have to prove that the peaches were contaminated. . . . You have to prove that the plaintiff ate the contaminated peaches. That he suffered the condition that arose from the contamination. And he suffered damages. And . . . there's no direct evidence of contamination. There are suggestions that he . . . might have been exposed, but there's no actual scientific proof that the peaches were contaminated. There's no real proof, frankly, that he ate Wawona peaches. . . .

Nevertheless, I'm looking at the expert that . . . [Picciano is] relying upon, Dr. Spira, . . . but . . . all he's really saying is that the conditions he was suffering from were compatible. And he's relying on [Picciano] telling [him] in diagnosing listeria, . . . and, again, I understand that by the time the testing comes about he may have already been treated for it and it's no longer there. But that doesn't change the fact that he still has to come into court and establish all those facts. And I just don't see it. . . .

But . . . even in a summary judgment setting, where I'm supposed to give all reasonable inferences to the [non-moving party], I just don't see any scientific evidence that supports [Picciano's] claim. . . .

. . . I would also, as an additional reason, allow Costco['s] summary judgment motion to go through because there's no evidence that they, in any way,

A-3071-17T2

altered, re-branded or . . . did anything else to the packaging or the actual . . . peaches, themselves, when they came into their possession.

This appeal followed.

## I.

We review "an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We "must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)).

We must review the facts in a light most favorable to the non-moving party, "keeping in mind '[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion . . . would require submission of the issue to the trier of fact.'" Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J. Super. 346, 366 (App. Div. 2015) (alteration in original) (quoting R. 4:46-2(c)). A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011), self-serving statements

unsupported by legally competent evidence, <u>Heyert v. Taddese</u>, 431 N.J. Super. 388, 413-14 (App. Div. 2013), or disputed facts "of an insubstantial nature." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.1 on <u>R.</u> 4:46-2 at 2053 (2019).

"[I]t is evidence that must be relied upon to establish a genuine issue of fact. 'Competent opposition requires "competent evidential material" beyond mere "speculation" and "fanciful arguments."'" <u>Cortez v. Gindhart</u>, 435 N.J. Super. 589, 605 (App. Div. 2014) (emphasis omitted) (quoting <u>Hoffman v. Asseenontv.Com, Inc.</u>, 404 N.J. Super. 415, 425-26 (App. Div. 2009) (citing <u>Merchs. Express Money Order Co. v. Sun Nat'l Bank</u>, 374 N.J. Super. 556, 563 (App. Div. 2005))). "The practical effect of this rule is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." <u>Bhagat</u>, 217 N.J. at 38.

Picciano argues summary judgment was improperly granted because he established defendants were strictly liable. At a minimum, he assert there were material facts in dispute which thwarted summary judgment. He argues he presented medical expert testimony to support his claims and the judge erred when he determined there was no expert testimony to establish causation.

A-3071-17T2

II.

Products liability actions are governed by the Products Liability Act (PLA).  N.J.S.A. 2A:58C-1 to -11.  Pursuant to the PLA, a cause of action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. 2A:58C-1(b)(3).

The PLA states:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable[,] or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
>
> [N.J.S.A. 2A:58C-2]

A manufacturer or seller of product may be held strictly liable for harm caused by a product for defective manufacture, defective design, and defective warnings.  Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 94-95 (1990).  All three theories require a plaintiff to prove that the product was defective, the

10

defect existed when the product left the hands of the defendant, and the defect caused the injury to plaintiff. Myrlak v. Port Auth., 157 N.J. 84, 97 (1999).

"A product is deemed to be defective if it is not reasonably fit, suitable, or safe for the ordinary or foreseeable purpose for which it is sold." Ibid. However, "[t]he occurrence of an accident and the fact that someone was injured are not sufficient to demonstrate a defect." Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 332 (App. Div. 2004) (citing Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 65 N.J. 582, 591 (1974)).

We reject Picciano's challenges to the summary judgment decision. The evidence offered to demonstrate he had purchased Wawona peaches was limited to his self-serving deposition testimony, a nationwide notice of recall issued by Wawona, and a lot and block number published as part of the recall. However, Picciano admitted he no longer possessed any of the peaches, or the packaging to link the peaches he purchased to the recalled lot and block. Picciano's Costco receipt did not indicate the brand of peaches he purchased and only provided a product number, which was associated with approximately seven distributors and not exclusively Wawona. The record also lacks evidence the peaches Picciano consumed were actually contaminated. The recall notice issued by

11

Wawona only stated the products sold to certain distributors were "potentially" contaminated.

The medical evidence only indicated Picciano's symptoms were "compatible" with a diagnosis of Listeria exposure, and his stool cultures were not positive for Listeria. It was undisputed he suffered from pre-existing IBS and the symptoms he experienced were also compatible with this condition. Although Dr. Moaven's initial report listed six diagnoses, including Listeriosis, the subsequent reports noted the condition was "presumed" and "not documented." Dr. Spira's report only stated Picciano's symptoms were "compatible with an attack of febrile gastroenteritis secondary to Listeria." Therefore, the record lacks competent evidence Picciano actually suffered from Listeria exposure.

Picciano's argument also fails to establish Costco is liable as a seller of the allegedly contaminated peaches. He cites McGuinness v. Wakefern Corp., 257 N.J. Super. 339 (1991) for the proposition that seller liability can be imposed on the Costco defendants under the PLA. However, the case is inapposite because it did not address seller liability under the PLA.

The PLA defines "product seller" as

> any person who, in the course of a business conducted
> for that purpose: sells; distributes; leases; installs;

prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications[,] or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.

[N.J.S.A. 2A:58C-8.]

N.J.S.A. 2A:58C-9(a) provides that "[i]n any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death[,] or damage." "Upon filing the affidavit . . ., the product seller shall be relieved of all strict liability claims, subject to the provisions set forth in subsection d. of this section." N.J.S.A. 2A:58C-9(b). A product seller is immune from liability where it identifies the manufacturer of the defective product, unless there are exceptional circumstances proving the product seller exercised control contributing to the product's defect, knew or should have known about the defect, or created the defect. N.J.S.A. 2A:58C-9(d).

The Costco defendants have no seller liability because the record demonstrated they did not alter or re-brand the product, or manipulate the packaging in any way. Picciano conceded the Costco defendants did not alter the peaches in any way, did not create or manufacture the product, and were not aware of the contamination at the time of purchase. As we noted, Picciano

13

conceded the alleged contamination occurred at the manufacturer's facility. Therefore, none of the exceptions under N.J.S.A. 2A:58C-9(d) were met.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14