WILLIAM P. CORBIN, PLAINTIFF-APPELLANT, v. CAMDEN COCA-COLA BOTTLING CO., BODY CORPORATE, DEFENDANT-RESPONDENT, v. ROBERT D'AMICO, t/a NANCY'S COLD CUTS, DEFENDANT.

Argued February 8, 1972—Decided May 8, 1972.

Mr. *Nicholas A. Lacovara* argued the cause for plaintiff-appellant.

Mr. *Michael Patrick King* argued the cause for defendant-respondent (*Messrs. Kisselman, Devine, Deighan &*

*Montano,* attorneys; *Mr. Arthur Montano,* of counsel; *Mr. Michael Patrick King* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. This is a products liability case. While shopping at a retail grocery store plaintiff, William P. Corbin, was injured when a Coca-Cola bottle burst, resulting in substantial damage to his eye. He brought this action in negligence and breach of implied warranty against Camden Coca-Cola Bottling Co. (Coca-Cola), the bottler, and Robert D'Amico, the owner of the store.* Defendants denied liability and each defendant asserted claims for contribution or indemnification against the other. At the trial the negligence claim against Coca-Cola was dismissed with consent of counsel. In answer to interrogatories submitted by the court the jury found in favor of the plaintiff against Coca-Cola only. The jury absolved D'Amico of negligence and made no finding against him for breach of warranty. However, the trial court entered judgment against both defendants, in effect molding the verdict to hold D'Amico liable for breach of warranty. Coca-Cola later moved for a judgment n.o.v. or in the alternative for a new trial. The motions were denied. Coca-Cola appealed to the Appellate Division. There was no appeal by defendant D'Amico. In an unreported opinion the Appellate Division reversed and entered judgment for Coca-Cola. We certified the matter. 59 *N. J.* 361 (1971).

On July 9, 1963, the plaintiff was a customer in D'Amico's grocery store. After obtaining various items and placing them on the counter, he asked D'Amico where the no-deposit Coca-Cola was kept. He was directed to the rear of the store where he noticed one carton of four 16-ounce Coca-Cola bottles on the floor beside a rack containing soda pop. He testified that he picked up the carton and was in a crouched position when the following occurred:

---

*Plaintiff also brought suit against the Coca-Cola Company but apparently this action has been abandoned.

[A]s I started to lift it, something didn't seem exactly right and I looked down toward it and about that time the bottle burst and I had Coca-Cola all over my face.

Plaintiff said that he still had two fingers in the apertures which were designed for holding the carton and noticed two bottle tops sticking up out of the top. D'Amico came over, took the carton, told plaintiff that he had cuts on his face and gave him some bandaids. After leaving the store plaintiff realized that his vision was impaired and went to a nearby hospital. After an examination he was told his eye was cut. He underwent an operation at the Philadelphia Naval Hospital and remained there for an extended period of time. His eye is now permanently damaged.

On cross-examination plaintiff said that he lifted the carton "straight up." He also expanded upon his unusual feeling when he lifted the carton:

[W]hen you have handled something a number of times, you pick up something supposedly the same and there is something wrong with it, you can sense a difference.

He testified that he noticed nothing unusual about the appearance of the carton before picking it up and that he had not examined it after the accident. He also said that he did not see a bottle fall from the carton.

Plaintiff called defendant D'Amico who testified that he saw the entire incident. His version differed from the plaintiff's. He said that Corbin dropped the carton to the floor, a bottle burst and glass struck plaintiff in the face. He said that after the accident he noticed three bottles intact and the top of the fourth still in the carton. He also said that he did not observe any rips or tears in the carton. However, after his pretrial deposition was brought to his attention he admitted he did not know whether the carton was ripped or torn. After the accident he threw the carton away and it was never recovered.

D'Amico testified that he sold three or four cases (containing six four-bottle cartons) of this type of Coca-Cola a week and that the carton in question was "brand new merchandise." He said that the Coca-Cola drivers would deliver the cartons and place them on a rack provided by Coca-Cola in the store and they would remain there until sold. He further said that every evening a teenage boy mopped the floor with an ammonia and cold water solution. He was sure that no mopping was done over bottles or under the cartons and that water was not spread over the floor.

Winfield Mace, sales manager for Coca-Cola at the time of the accident, was also called by the plaintiff. He testified that his duties included investigation of accidents such as the one here. He said that a few days after plaintiff was injured, D'Amico told him that as the plaintiff picked up a carton of Coca-Cola a bottle fell out of it and broke, and a piece of glass struck plaintiff above the eye. This of course was contrary to D'Amico's testimony and consistent with plaintiff's. Mace admitted that "there have been instances where bottles fall out of a carton, fall on the floor. There have been several instances like that." He said that these instances usually occurred in stores.

Roger Harvey, a consulting engineer who was affiliated with New York Testing Laboratories from 1952 to 1965, testified for the plaintiff. His duties at the Laboratories included testing paper, cardboard and other packaging materials. He had tested a Coca-Cola carton which was identical to the one involved here. In answer to a hypothetical question based upon the facts described by the plaintiff it was his opinion that the carton was defective in one of two respects: "[E]ither there was a tear on the bottom of the carton, such as to enable the bottle to slip from the carton, or else the bottom of the carton was wet . . . ." He said that his tests showed that the carton had a dry-tear strength of six pounds and a wet-tear strength of two pounds. He was of the opinion that the tear strength of the dry carton was "low, because it takes very little force, if somebody is

handling it, to cause it to impinge upon some projection and then cause it to tear; just merely six pounds, which is something any child could apply." He thought the carton was adequately designed to hold the bottles if it were not torn or weakened.

At the end of his case plaintiff introduced into evidence the Coca-Cola carton which was tested by Harvey and which was stipulated to be of the same type as the one involved in the accident. With consent of plaintiff the negligence claim against Coca-Cola was dismissed but motions to dismiss the claim of breach of warranty against Coca-Cola and negligence and breach of warranty against D'Amico were denied. Coca-Cola's motion to strike the expert Harvey's testimony was also denied. Both defendants rested without calling any witnesses.

In response to special interrogatories submitted by the trial court, the jury found that there was a defect in the carton which was a proximate cause of plaintiff's injuries and that the defect was not created by D'Amico but originated while the carton was in the control of Coca-Cola. The jury also found that the plaintiff was not negligent in his handling of the carton.

On its appeal to the Appellate Division, Coca-Cola contended the trial court erred (1) in submitting to the jury the question of its liability under the doctrine of strict liability (breach of warranty) because there was no proof of any defect caused by Coca-Cola; (2) in charging that the doctrine of *res ipsa loquitur* was applicable to the breach of warranty claim against Coca-Cola; and (3) in refusing to strike the testimony of plaintiff's expert. In reversing, the Appellate Division held there was no competent proof of a defect in the carton. It said the expert's testimony was "relatively worthless" because it was based upon one or the other of two alternate hypotheses, neither of which was supported by the evidence. It stated there was no proof that the carton had a tear in it or was wet. Further, it said there was no evidence that a bottle fell from the bottom of

the carton. The Court also rejected Harvey's testimony as to the tear strength of the carton because it was "based on his own opinion as distinguished from the generally accepted views of experts in the field dealing with the product in question," citing *Fernandez v. Baruch et al.,* 52 *N. J.* 127, 131 (1968). Because of its disposition of the case the Court did not consider the other issues raised by the defendant.

We have adopted the doctrine of strict liability in tort in products liability cases. *Rosenau v. City of New Brunswick and Gamon Meter Co.,* 51 *N. J.* 130 (1968); *Santor v. A. & M. Karagheusian, Inc.,* 44 *N. J.* 52 (1965); *Schipper v. Levitt & Sons, Inc.,* 44 *N. J.* 70 (1965); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358 (1960). Under this doctrine proof of the manufacturer's negligence is not required. As we said in *Santor, supra* 44 *N. J.* at 66–67:

> If the article is defective, *i. e.,* not reasonably fit for the ordinary purposes for which such articles are sold and used, and the defect arose out of the design or manufacture or while the article was in the control of the manufacturer, and it proximately causes injury or damage to the purchaser or reasonably expected consumer, liability exists.

In the present case there was evidence which the jury accepted that the plaintiff did not mishandle the carton when he picked it up. Thus, it rejected D'Amico's testimony that plaintiff dropped the carton. It is common knowledge that bottles do not ordinarily fall out of properly made cartons which are not mishandled. Therefore, the jury could reasonably conclude that the carton was defective at the time of plaintiff's injury. As this Court said in affirming the Appellate Division in *Sabloff v. Yamaha Motor Co., Ltd.,* 113 *N. J. Super.* 279 (App. Div.), aff'd *per curiam,* 59 *N. J.* 365, 366 (1971):

> [W]henever the facts permit an inference that the harmful event ensued from some defect (whether identifiable or not) in the product, the issue of liability is for the jury . . . .

■ In its third point Coca-Cola argues that for the same reasons which the Appellate Division advanced the trial court erred in refusing to strike Harvey's testimony. However, we think the expert's opinion that the accident occurred because the carton was defective was for the jury's consideration. See *Henningsen v. Bloomfield Motors, Inc., supra* 32 *N. J.* at 411; *Sabloff v. Yamaha Motor Co., Ltd., supra,* 113 *N. J. Super.* 279. His opinion as to the defect in the carton (that it was torn or wet) is at least as probative as the opinions of the experts in *Henningsen* and *Sabloff* which were permitted to go to the jury.

In *Henningsen* the plaintiff was injured when the recently purchased automobile she was driving went out of control and hit a highway sign. Plaintiff testified that she heard a noise under the hood, the steering wheel spun in her hands and the car veered sharply into the sign. In upholding her claim for breach of warranty the Court referred to her expert's opinion as follows:

> [H]is assertion in answer to the hypothetical question that the unusual action of the steering wheel and front wheels must have been due to a mechanical defect or failure of something from the steering wheels down to the front wheels, that 'something down there had to drop off or break loose' to cause the car to act in the manner it did, cannot be rejected as a matter of law. Its evaluation under all the circumstances was a matter for jury consideration. *Id.* 32 *N. J.* at 411.

In *Sabloff* the plaintiff was injured while operating a motorcycle he had recently bought. He testified that the front wheel locked causing the cycle to go out of control and strike a parked car. His expert, who did not see the wheel while it was still on the motorcycle, was of the opinion that the accident could have been caused by either a driving error (which was negated by plaintiff's testimony) or a mechanical error in too much "side play [of the wheel] due to improper tightening of the nut." *Id.,* 113 *N. J. Super.* at 284. The Appellate Division in reversing the trial court's dismissal at the close of the entire case commented

that the expert's testimony was not speculative and should have been submitted to the jury. *Id.*, 113 *N. J. Super.* at 288.

While it is true that the expert's opinion was not based on generally accepted standards, he did say that the cardboard in the carton could be torn by the pressure of a child. The jury, which had the sample carton before it, could reasonably conclude without standards that its tear strength was low. This case does not involve complicated medical testimony unfamiliar to the layman such as was before the jury in *Fernandez, supra,* which necessitates standards. We conclude the trial court was correct in refusing to strike the expert's testimony.

Coca-Cola argues that assuming a defect existed the plaintiff failed to establish that the defect originated when the carton was within its control, citing *Jakubowski v. Minnesota Mining & Manufacturing Co.,* 42 *N. J.* 177 (1964).

In *Jakubowski* plaintiff, a workman on an automobile production line, was injured when an abrasive disc attached to a grinding machine he was using broke and struck him. Plaintiff sued the manufacturer in negligence and strict liability. The evidence showed that plaintiff had relieved another workman who had been using the disc. Due to the punishing work the disc was subjected to it was expected to perform only five operations before replacement was necessary. Plaintiff did not produce any evidence that the expected useful life of the disc had not been exhausted at the time it broke. Nor did he show that the disc had not been mishandled by the prior user. In upholding the trial court's dismissal of the case at the close of plaintiff's proofs, this Court stated: "In order to recover, he [plaintiff] must present evidence from which it is reasonable to infer that more probably than not the cause of the break was one for which the defendant is responsible." *Id.* at 186. The Court said there were four possible causes for the break, *viz.,* manufacturing flaw, inadequate design, misuse or overuse. *Id.* The plaintiff introduced no evidence which indicated one of the

causes was more probable than the others. Thus, we held that plaintiff failed to show that the defect "had its genesis when the instrumentality was within the control of the manufacturer." *Id.* at 183–184. We think *Jakubowski* is readily distinguishable from the present case.

Here, unlike the plaintiff in *Jakubowski,* Corbin produced evidence from which the jury could determine the probable cause of the accident. The proofs permitted the jury to find that plaintiff did not mishandle the carton. The jury expressly accepted this proof leaving the possibility that the carton was torn or weakened while in the possession of Coca-Cola or after delivery to the store. The evidence permitted the jury to find D'Amico's employees in mopping the floor did not damage or weaken the carton in any way.** Thus, the jury could from the expert's testimony and the attendant circumstances have drawn the inference that a tear attributable to a defect in the carton was the proximate cause of the accident. It was not prevented from so finding by the expert's alternative theory of wetness of the carton, not otherwise substantially supported by the proofs. The jury need not have accepted every theory set forth by the expert.

D'Amico testified that the carton was "brand new merchandise." In view of the relatively high turnover of this product (18 to 24 cartons a week), the jury could reasonably infer that the carton in question was in the store for a short period of time.

Even assuming that the carton was handled by a customer and thereby torn or weakened, the manufacturer should not be absolved. Products available to the public should be sturdy enough to withstand ordinary handling in the place where they are sold. In this respect it is significant that Coca-Cola's sales manager testified that he knew of instances in stores where bottles fell out of cartons. Plaintiff's expert testified that the carton which the jury

***

**We do not suggest that a carton could not be found to be defective if it could not withstand such exposure to water.

had before it was of a "low-tear strength." From this evidence the jury could properly find that as a result of the low tear strength the bottom of the carton gave way. Therefore, it could reasonably conclude the accident was attributable to a defect for which Coca-Cola is responsible.

Of course it is possible that someone unconnected with Coca-Cola might have torn the bottom of the carton either intentionally or by handling the carton in a manner for which it was not intended, an occurrence for which the company would not be responsible. However, under the circumstances here the jury could find this possibility remote. In every accident of this nature there are an infinite number of possible causes. In *Henningsen* the car was in the possession of the Henningsens for ten days. Is it not possible that someone could have tampered with the steering mechanism? The plaintiffs produced no testimony to negate that possibility. Yet the Court said: "In our view, the total effect of the circumstances shown from purchase to accident is adequate to raise an inference that the car was defective and that such condition was causally related to the mishap." *Id.* 32 *N. J.* at 409.

Here, plaintiff produced sufficient evidence for the jury to reasonably conclude that the defect was one for which Coca-Cola was responsible. *Jakubowski* requires no more. See also *Prosser, Law of Torts* (3d ed. 1964) at 222–225. Although the possibility that someone might have tampered with the carton after delivery to the store was not conclusively negated by the proofs, as we have previously said, the jury could have concluded that such tampering was not likely.

We hold that under the circumstances of this case there was sufficient evidence to submit to the jury the question of strict liability. We also hold that the trial judge properly denied Coca-Cola's motion to set aside the verdict as against the weight of the evidence.

Finally, Coca-Cola contends that the trial court erred in charging that the doctrine of *res ipsa loquitur* applied to

the breach of warranty claim against it. It argues that the doctrine is inapplicable because Coca-Cola did not have control of the carton at the time of the accident and further that the doctrine does not apply to claims for breach of warranty. We disagree.

As we said earlier in this opinion, bottles do not ordinarily fall out of properly made cartons which are not mishandled. As we have also said, there was evidence that the carton was not improperly handled by the plaintiff and that the defect was probably attributable to Coca-Cola. To invoke the doctrine of *res ispsa* plaintiff need not altogether eliminate the possibility of other causes but only that their likelihood be so reduced that it is more probable than not that, in the absence of an explanation to the contrary, the cause of the defect was one for which the defendant is responsible. *Lorenc v. Chemirad Corp.*, 37 *N. J.* 56, 70–71 (1962) ; *Prosser, supra,* at 222–225.

While it has been said that the doctrine does not apply to breach of warranty cases, *United States Rubber Co. v. Bauer*, 319 *F. 2d* 463, 468 (8th Cir. 1963), under the circumstances here it may be said that in a broad sense the theory underlying the doctrine of *res ipsa* does apply, *i. e.,* the circumstances give rise reasonably to an inference of a defect in the carton. Undoubtedly, it was in that sense that the trial court referred to *res ipsa loquitur*. Thus, it was not reversible error to use the maxim in this limited fashion, that is, by substituting a defect in the product for negligence in its manufacture. While a trial court should refrain from using the phrase because it does nothing to aid the jury, defendant asserts no error in that regard. As we have said above, its sole claim is that the principle was not available to the plaintiff on the facts in the case. We hold there was no prejudicial error in the charge.

For the reasons stated above the judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.