DiLello v. Union Tools, No. S0149-02 CnC (Katz, J., May 13, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:

DiLELLO

v.

UNION TOOLS

ENTRY

This is a case about a spading fork.  A spading fork is a common garden tool used to divide perennials or to turn up and loosen soil, like its mechanical counterpart the tiller.[1]  Unlike a pitchfork with its long, staff-

---

[1]See J. Macunovich, <u>Dividing Grasses Requires Two Forks, Heft and Plenty of Muscle</u>, Det. News, Sept. 13, 2003, available at http://www.detnews. com/2003/garden/0310/09/e08-268675.htm; L. Perry, <u>Garden Tools of the Trade</u>, The Green Mountain Gardener (UVM Ext.), Winter, available at http://pss. uvm.edu/ppp/articles/tools.htm (last visited May 7, 2004).

like handle and its thin, springy metal tines, the spading fork has four substantial tines and either a stouter handle or, as in this case, a short, thick stock with a stirrup-shaped handle. Plaintiff was using his newly purchased spading fork in the garden when the wooden stock shattered, sending splinters into his eye, causing substantial injuries. Plaintiff has brought a claim for products liability for a manufacturing defect against defendants for making and selling a defective fork. Defendants have asserted the affirmative defense of comparative negligence. Plaintiff has now moved for summary judgment.

Plaintiff's claim for summary judgment is premised upon his prima facie case. A prima facie case is defined as "such that will prevail until contradicted and overcome by other evidence." Black's Law Dictionary 1070 (5th ed. 1979). It is used by courts in two senses:

> (1) in sense of plaintiff producing evidence sufficient to render reasonable a conclusion in favor of allegation he asserts; this means plaintiff's evidence is sufficient to allow his case to go to jury, and (2) courts used "prima facie" to mean not only that plaintiff's evidence would reasonably allow conclusion plaintiff seeks but also that plaintiff's evidence compels such a conclusion if the defendant produces no evidence to rebut it.

Id. (quoting Husbands v. Pennsylvania, 395 F. Supp. 1107, 1139 (D.C.Pa. 1975)). As this is a motion for summary judgment, we examine the sufficiency of plaintiff's evidence in this second sense of "prima facie."[2]

---

[2] Defendants assert that "prima facie evidence of negligence" is a rule limited to safety statutes and regulations. We find no support for this in the cases cited by defendants. Prima facie evidence is evidence that suffices, barring any further evidence, to prove a fact in issue. This description of evidence has not to

Plaintiff's evidence consists of the following facts. According to plaintiff's expert, the accident was caused by a piece of defective wood used in the stock. The expert identified the defect as brashness, a condition in some wood that makes it weaker and more susceptible to breaking, and opined that it caused the fork to fail at a critical time, namely when plaintiff was putting stress on it while spading. Plaintiff also avers that he did not modify the spading fork or misuse it by putting improper pressure on the fork, its handle, or stock.

Products liability is often interpreted and applied through a strict liability framework. See, e.g., <u>Darling v. Central Vt. Pub. Serv. Corp.</u>, 171 Vt. 565, 567 (2000) (reaffirming Vermont's adoption of strict products liability); but see <u>Webb v. Navistar Int'l Transp. Corp.</u>, 166 Vt. 119, 135 (1996)(Morse, J., concurring) (suggesting that some design defect and duty to warn cases under § 402A would nevertheless be treated as negligence cases). An early case in the development of products liability, <u>Escola v. Coca Cola Bottling Co.</u>, introduced this standard by suggesting that courts remove the plaintiff's burden to prove that the defendant acted negligently. <u>Escola v. Coca Cola Bottling Co.</u>, 150 P.2d 436, 440 (Cal. 1944) (Traynor, J. concurring). In <u>Escola</u>, a waitress suffered injuries when the glass Coca-Cola bottle in her hand shattered of its own accord. <u>Id</u>. at 437–38. At that time, the common law required the waitress to prove: (1) that the defect in the bottle caused her harm; (2) that the bottle was defective when it left Coca-Cola's hands; and (3) that the defect was brought about only through Coca-Cola's negligence. See <u>id</u>. at 438–39. The waitress attempted to circumvent this last issue through res ipsa loquitur, which the California Supreme Court accepted. <u>Id</u>. at 440. In concurrence, Justice Traynor

---

our knowledge been limited to a  particular area of negligence law.

suggested that negligence was the improper standard to review such cases. Id. He recommended instead that "a manufacturer incurs an absolute liability when an article that he has placed in the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings." Id. This theory of strict products liability eventually took hold in American tort law and was accepted by a majority of jurisdictions. See, e.g., Greenman v. Yuba Power Prods., Inc., 377 P.2d 897 (Cal. 1963); Zaleskie v. Joyce, 133 Vt. 150, 333 A.2d 110 (1975); Restatement (Second) of Torts § 402A; 2 D. Dobbs, The Law of Torts §§ 352, 353 (2001).

Under strict products liability, plaintiff is no longer required to prove that the defect, which caused his injury, was the result of defendant's negligence. As such, it eliminates the third problem of proof from Escola. It does not, however, release plaintiffs from the two remaining problems of proving that the defect caused the injury and that the product was defective when it left the defendants' hands. In this case, plaintiff argues that he meets these burdens because he has established evidence that he did not misuse or modify the product and that the defendant manufacturer and seller are liable as a matter of law. This suggests a fallacy of hasty induction, namely "if there was an accident, then there must have been a manufacturing defect." Despite any relaxed standards of proof under strict products liability, plaintiff must still establish that the spading fork's brashness (or another defect) caused his accident and that the spading fork contained the brashness (or another defect) at the time of sale. Dobbs, § 354, at 977–78 (noting that the Restatement (Third), like the Restatement (Second), continues to premise liability solely on defective products rather than perfectly made products).

To prove that a product was manufactured in a defective manner, plaintiff has two, well-established methods of proof, direct and circumstantial evidence. Myrlak v. Port Authority of N.Y. and N.J., 723 A.2d 45, 53 (N.J. 1999); Scanlon v. Gen. Motors Corp., 326 A.2d 673 (N.J. 1974). In this case, plaintiff has presented direct evidence of the defect through his expert witness' proposed testimony on brashness. Although the defendants' counter-evidence refutes plaintiff's evidence for purposes of summary judgment, Samplid Enters. v. First Vt. Bank, 165 Vt. 22, 25 (1996), it appears to be enough to take the case to the jury. Myrlak, 723 A.2d at 53. Even if plaintiff had no evidence of brashness, however, he could, with enough circumstantial evidence—such as the fact that the fork was only two days old and that at the time of the accident it was being used for its intended purpose, gardening—satisfy his burden and send the case to the jury as well. Id. By offering evidence that exculpates him from any wrongdoing or negligence in the incident, plaintiff's motion is also premised on another method altogether. See Tweedy v. Wright Ford Sales, Inc., 357 N.E.2d 449 (Ill. 1976). This method of proof is known as the Indeterminate Product Defect Test and has been codified as § 3 of the Restatement (Third) of Torts: Products Liability. This section allows that:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of product defect; and
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

Restatement (Third) of Torts: Products Liability § 3 (1998); see also J. Henderson & A. Twerski, The Politics of the Products Liability

Restatement, 26 Hofstra L. Rev. 667, 690 (1998) (discussing the function of § 3).[3] As defendant correctly points out, § 3 does take the burden of proof off the plaintiff, but like strict liability, it relaxes the standard of proof and permits the plaintiff to receive a jury instruction without evidence of a specific defect. While Vermont has not explicitly adopted § 3, it is rooted in the longstanding doctrine of res ipsa loquitur and has been accepted in several jurisdictions. Id. at rep.cmt.a (noting that the Restatement (Second) of Torts § 328D was the model for § 3 and citing to supporting case law from multiple jurisdictions); see also J. Henderson & A. Twerski, Products Liability Problems & Process 25 (4th ed. 2000) (arguing that case law in almost every jurisdiction is in accordance).

Ultimately, we are less concerned today with the viability of § 3's Indeterminate Product Defect Test than with plaintiff's argument for its application. The principle behind res ipsa and § 3 is that manufacturing defects may be inferred through evidence that removes other causative factors. This makes it highly unsuitable for summary judgment where all inferences go to the non-moving party. Samplid Enters., 165 Vt. at 25. More importantly, it distorts the function of § 3, which like res ipsa, is primarily intended to allow plaintiffs' cases to survive motions for directed verdict and go to the jury. See Restatement (Third) of Torts: Products Liability § 3 cmt. b (trier of fact may draw the inferences allowed by § 3); 1 Dobbs, § 154, at 370–71 (jury permitted through res ipsa loquitur to infer negligence); see also Myrlak, 723 A.2d at 57 (reversing based on failure of trial court to instruct jury on inference of defect); Tweedy, 357 N.E.2d at 450, 452 (affirming a jury verdict based on an inferred defect).

---

[3] The fact that plaintiff has direct and circumstantial evidence of a defect raises questions about the applicability of § 3. Restatement (Third) of Torts: Products Liability § 3 cmt.b (1998). Notwithstanding these concerns, we will address plaintiff's motion directly.

Beyond these threshold issues, plaintiff has not established evidence that this incident is of the type that "ordinarily occurs as a result of a product defect."  On the other hand, defendants have submitted evidence — photographs and expert testimony—that the tines of the fork showed signs of misuse.  We infer this to suggest that plaintiff was misusing the spading fork.  Either of these problems alone would be enough to find this motion wanting, and together they render summary judgment through § 3 inappropriate.

Plaintiff's motion for summary judgment is denied.


Dated at Burlington, Vermont_____, 2004.


_____
Judge