**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3184
_____

KEVIN MCMANUS,
Appellant

v.

BARNEGAT OPERATING COMPANY, L.P.,
doing business as Barnegat Rehabilitation and Nursing Center;
HEARTLAND REHABILITATION SERVICES; JOHN DOES 1-5;
CROWN EQUIPMENT CORPORATION; JOHN DOES 6-10;
JOHN DOES 11-20; MCKESSON MEDICAL
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-15-cv-02109)
District Judge:  Honorable Brian R. Martinotti
_____

Argued:  September 9, 2020
_____

Before:  CHAGARES, HARDIMAN, and MATEY, Circuit Judges

(Opinion filed: October 2, 2020)
_____

William J. Martin [ARGUED]
Martin Gunn & Martin
216 Haddon Avenue
Suite 420
Westmont, NJ 08108

    Counsel for Appellant

Timothy I. Duffy
Joseph C. Amoroso
Coughlin Duffy
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962

Thomas J. Cullen, Jr. [ARGUED]
Goodell DeVries Leech & Dann
One South Street
20th Floor
Baltimore, MD 21202

       Counsel for Appellee Crown Equipment Corporation

——————————

OPINION[*]

——————————

CHAGARES, Circuit Judge.

Kevin McManus sued Crown Equipment Corporation ("Crown") based on injuries that he suffered while using a pallet jack manufactured by Crown, which he claims was defective under New Jersey's Products Liability Act. The District Court granted Crown's motion for summary judgment because it concluded that McManus could not prove a manufacturing defect under the indeterminate product defect test. We hold that the District Court should also have considered whether McManus could prove his product defect claim under the circumstantial evidence test. Accordingly, we will reverse and remand.

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. The Crown PTH 50 Series pallet jack is a type of cart or truck used to lift and transport heavy loads. Users operate the pallet jack via a handle that can be positioned at various angles. The handle features a lever that can raise or lower two forks, which are at the front of the pallet jack and bear the load to be moved. Because the pallet jack's forks are designed to lower rapidly, squeezing the pallet jack's lever can serve as an emergency stop function if the weight of a load causes the pallet jack to gain momentum. The angle at which a user positions the pallet jack's handle should not affect the speed at which its forks lower.

McManus used a Crown pallet jack to deliver two pallets to Barnegat Rehabilitation and Nursing Center, which required him to unload his delivery on a sloped surface. One of the pallets picked up significant momentum as McManus moved it down the slope. Though McManus squeezed the pallet jack's lever to initiate an emergency stop, the pallet jack's forks did not lower quickly. McManus's arm was caught in the pallet jack's handle, and he was injured as the pallet jack dragged him down the slope.

McManus filed suit against Crown, alleging that the pallet jack that he used suffered from a manufacturing defect. He claimed that the pallet jack's forks would only lower as rapidly as designed if he held the handle fully upright, rather than at the angle at which he held it during the accident. Because the pallet jack that McManus used had been lost or destroyed, though, McManus's engineering expert could not identify the specific cause of the alleged malfunction. McManus instead sought to prove his

3

manufacturing defect claim through the "circumstantial evidence test," which allows a plaintiff to attribute a product defect to the manufacturer based on factors including the product's age, prior usage, and expected durability.  Crown moved for summary judgment against McManus and the District Court held that McManus could not rely upon the circumstantial evidence test because he could not identify a specific defect with the pallet jack.  The District Court reasoned that plaintiffs who cannot identify specific defects must instead rely on the indeterminate product defect test alone, and it granted Crown's motion for summary judgment because it concluded McManus could not satisfy that test's requirements.  This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.  Our review of questions of state law is plenary.  Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 369 (3d Cir. 1996).  We also exercise plenary review over the District Court's grant of summary judgment.  Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020).  We will affirm a grant of summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

## III.

To prove a manufacturing defect claim under the New Jersey Products Liability Act, a plaintiff must establish "that [a] product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user."  Myrlak v. Port Auth.

4

of N.Y. & N.J., 723 A.2d 45, 52 (N.J. 1999). Establishing that a product was defective "requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product." Scanlon v. Gen. Motors Corp., 326 A.2d 673, 677 (N.J. 1974). It does not require proof of a specific defect. Moraca v. Ford Motor Co., 332 A.2d 599, 601 (N.J. 1975). New Jersey law traditionally provided three methods to prove that the defect existed when the product left the manufacturer's control: (1) offering direct evidence of the product defect and when it arose; (2) showing that the accident would not normally have occurred absent a product defect under the circumstantial evidence test, such as by comparing the age and prior usage of the product to its durability and expected life span; and (3) negating causes for the product failure that could not be attributed to the defendant, to make it reasonable to infer that the defect was attributable to the defendant. See Scanlon, 326 A.2d at 678–79.

In Myrlak, the New Jersey Supreme Court added one more method of proving a product defect claim. The plaintiff in that case, who could not identify a specific defect, sought a jury instruction on the traditional negligence doctrine of res ipsa loquitur. The court determined that res ipsa loquitur would be inappropriate in a product defect case because it originates from a materially different legal context, and the court instead introduced the "indeterminate product defect test" as an effective substitute. See Myrlak, 723 A.2d at 54–55. Under this test, "[i]t may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of a product defect; and (b) was not, in the

5

particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Myrlak, 723 A.2d at 55. The court explained that the indeterminate product defect test was so called "because its use is limited to those product liability cases in which the plaintiff cannot prove a specific defect." Id. at 56.

The District Court cited the Myrlak opinion for the proposition that plaintiffs who cannot allege a specific defect are limited to using the indeterminate product defect test, while the circumstantial evidence test is limited to cases involving specific defects. Because it found that McManus could not identify a specific defect in the pallet jack, the District Court declined to consider whether McManus could raise a triable issue of fact under the circumstantial evidence test.

We predict that the New Jersey Supreme Court would interpret its opinion in Myrlak differently, though. Plaintiffs could rely on the circumstantial evidence test to prove non-specific defect claims before Myrlak, and we hesitate to conclude that the court limited the use of this long-established option by introducing the indeterminate product defect test. There is not much language in Myrlak to clearly support such a limitation on prior case law. While the Myrlak court noted that the indeterminate product defect test is limited to cases where a plaintiff cannot prove a specific defect, that does not necessarily mean a plaintiff who cannot prove a specific defect is limited to the indeterminate product defect test.

Nor is the proposed limitation implied by the observation that, "[i]f [a] plaintiff cannot satisfy [the] requirements [of the indeterminate product defect test], he is not entitled to have the jury charged regarding an inference of a product defect, and [the]

plaintiff would be obligated to establish one or more manufacturing defects required by the [New Jersey Products Liability] Act." Id. at 57. On the contrary, that statement implies that a plaintiff who cannot identify a specific defect or satisfy the indeterminate product defect test can still "establish one or more manufacturing defects" by other means. The court's language throughout Myrlak reveals that the indeterminate product defect test is an option that plaintiffs are permitted to use, rather than one that they are required to use.

Crown argues that the indeterminate product defect test would be illogically redundant if it did not limit the applicability of earlier methods of proof like the circumstantial evidence test. Crown Br. 24–26. The indeterminate product defect test is not necessarily redundant simply because it is consistent with other methods of proof, though. The indeterminate product defect test "permits the jury to draw two inferences: that the harmful incident was caused by a product defect, and that the defect was present when the product left the manufacturer's control." Myrlak, 723 A.2d at 55. In contrast, the three methods of proof discussed in Scanlon traditionally proved the timing of a defect (i.e., that the defect existed when the product left the manufacturer's control), and plaintiffs retained the burden to prove the defect itself by showing "something was wrong" with the product. See Scanlon, 326 A.2d at 677–79. Ultimately, the factual context of Myrlak suggests that the New Jersey Supreme Court adopted the indeterminate product defect test to address issues with the use of res ipsa loquitur, rather than with the use of other tests that had already been adopted in products liability cases. See Myrlak, 723 A.2d at 55 (calling indeterminate product defect test "an alternative to a traditional

*res ipsa loquitur* instruction"); <u>Jerista v. Murray</u>, 883 A.2d 350, 364 n.3 (N.J. 2005) (noting that indeterminate product defect test "does precisely what *res ipsa loquitur* does in a negligence context").

Accordingly, we conclude that the New Jersey Supreme Court's opinion in <u>Myrlak</u> does not preclude the use of the circumstantial evidence test when a plaintiff cannot identify a specific defect. Because the District Court has not yet addressed whether McManus could raise a genuine dispute of material fact under the circumstantial evidence test, we will remand for the court's consideration.

IV.

For the foregoing reasons, we will reverse the District Court's Order and remand for further proceedings.